UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
EASTERN SAVINGS BANK, FSB,

                              Plaintiff,                <u>MEMORANDUM & ORDER</u>

    -against-                                 10 CV 4655 (DRH)

THE ESTATE OF ALEXIS KIRK, by LISA
KIRK as Executor, and ALEXIA KIRK ANDRUS,
as Executor of the Estate of Alexis Kirk, his heirs,
distributees, devisees and personal representatives
and any of his successors in right, title and/or
interest,

                         Defendants.
---------------------------------------------------------X
**APPEARANCES:**

**KRISS & FEUERSTEIN, LLP**
Attorneys for Plaintiff
260 Lexington Avenue
Suite 1300
New York, New York 10017
By:    Jerold C. Feuerstein, Esq.

**LEWIS & GARBUZ, P.C.**
Attorneys for Defendants
60 East 42nd Street
Suite 4700
New York, New York 10165
By:    Lawrence I. Garbuz, Esq.

**HURLEY, Senior District Judge:**

       Plaintiff Eastern Savings Bank, FSB commenced this diversity action seeking to foreclose

on a mortgage encumbering real property located in Southampton, New York (the "Property").

The mortgage was executed by Alexis Kirk ("Kirk"), who subsequently passed away.  Plaintiff

has named as defendants the Estate of Alexis Kirk (the "Estate") by the Estate's co-executors,

Lisa Kirk and Alexia Kirk Andrus (collectively, the "defendants").  Presently before the Court is

a motion by defendants, made pursuant to 28 U.S.C. § 1447(c), requesting that the matter be

"remanded" from this Court to the New York State Surrogate's Court, New York County (the

"Surrogate's Court").  For the reasons set forth below, defendants' motion is denied.

## BACKGROUND

Plaintiff is a federally chartered savings bank with its usual place of business located in

Hunt Valley, Maryland.  (Compl. ¶ 2.)  On or about February 26, 2008, Kirk individually

executed a Note in which he promised to pay plaintiff the principal amount of $500,000 as

repayment of money that plaintiff loaned to him (the "Note").  (*Id.* ¶ 10 & Ex. C.)  That same

day, Kirk executed a mortgage (the "Mortgage"), whereby he pledged the Property as security for

the amount he promised to repay in the Note.  (Compl. ¶ 11, Ex. D.)  The Mortgage was duly

recorded in the Office of the Suffolk County Clerk on March 26, 2008.  (Compl. ¶ 11.)

On or about May 17, 2010, Kirk passed away.  (*Id.* ¶ 13.)  On May 21, 2010, Kirk's will

was offered for probate in the Surrogate's Court.  (*Id.*, Ex. B.)  The Surrogate's Court issued

Preliminary Letters Testamentary dated June 7, 2010, which named Lisa Kirk and Alexia Kirk

Andrus co-executors of Kirk's will.  (*Id.*)

Plaintiff alleges that the Estate has failed to comply with the terms and provisions of the

Note and Mortgage in that it did not make any of the required monthly payments between April

2010 and the filing of the Complaint.  (Compl. ¶ 16.)  Plaintiff commenced this action by filing

the Complaint in this Court on October 8, 2010, seeking a judgment of foreclosure and sale of

the Property pursuant to the New York Real Property Actions and Proceedings Law ("NY

RPAPL") Section 1301, et seq., so that plaintiff could recover the unpaid principal and interest

secured by the Note, as well as its attorneys' fees and costs.  (*Id.* ¶¶ 20, 21.)

2

### DISCUSSION

**I.      Defendants' Motion to "Remand" is Denied**

As noted above, defendants have filed the present motion pursuant to 28 U.S.C. §

1447(c), and they request that the action be "remand[ed]" from this Court to the Surrogate's

Court.  Defendants' request is denied because "[f]ederal district courts do not have the authority

to remand an action originally commenced in federal court . . . to a state tribunal . . . ."

*Schiffman v. Epstein*, 2009 WL 1787760, at *5 (S.D.N.Y. June 23, 2009); *see also Hatheril v.*

*Michael*, 1993 WL 385754, at *1 (S.D.N.Y. Sept. 23, 1993) ("This Court lacks the power and

authority to remove this case from federal to state court.").

The concept of "removal" is "limited to the transfer of an action originally commenced in

state court to a federal court."  *Hatheril*, 1993 WL 385754 at * 1; *see also* 28 U.S.C. § 1446.

"Thus, a case originally commenced by a plaintiff in federal court cannot then be removed . . .

from federal to state court."  *Hatheril*, 1993 WL 385754 at *1.  Moreover, the authority of a

district court "to remand [a] case to the state court from which it was removed . . . is limited to

instances where an action is commenced in state court and subsequently removed to federal

court."  *Schiffman*, 2009 WL 1787769 at *5.  Because this action was commenced in federal

court, 28 U.S.C. § 1447(c) does not confer upon this Court any authority to remand the action to

Surrogate's Court.  *See id.* (noting that "the authority to remand implies that the federal district

court can return or send a case back to where it was originally commenced.")[1]

---

[1]      Although not raised by defendants, the Court further finds that the federal change
of venue statute, 28 U.S.C. § 1404(a), does not vest it with any authority to transfer this case to
the Surrogate's Court.  That statute "applies only to courts within the federal court system" and
"makes no provision for transfer between the federal and state court system."  *Hatheril*, 1993 WL
385754 at *1 (quoting *Jones v. N.Y. City Dep't of Hous. Pres. & Dev.*, 1989 WL 79396, at *1

Thus, defendants' request that this Court remand or transfer this case to the Surrogate's Court is denied.

## II.    The Court will not Abstain From Exercising Jurisdiction

Defendants' motion can be read, in the alternative, as requesting that this action be stayed pending the outcome of the proceedings before the Surrogate's Court.  "The decision as to whether to stay a federal action on the ground that there is a related action pending in a state court is committed to the sound discretion of the district court."  *United States v. Pikna*, 880 F.2d 1578, 1582 (2d Cir. 1989).  In *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813 (1976), the Supreme Court held that "the doctrine of abstention . . . is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it."  Thus, "a district court may abstain in order to conserve federal judicial resources in exceptional circumstances, where the resolution of existing concurrent state-court litigation could result in comprehensive disposition of litigation."  *Nieves v. Bd. of Educ.*, 2006 WL 2989004, at *2 (E.D.N.Y. Sept. 15, 2006) (citing *Woodford v. Cmty. Action Agency of Greene Cnty.*, 239 F.3d 517, 522 (2d Cir. 2001)).

"[A] finding that the concurrent proceedings are 'parallel' is a necessary prerequisite to abstention under *Colorado River*."  *Dittmer v. Cnty. of Suffolk*, 146 F.3d 113, 117-18 (2d Cir. 1998).  The Court notes that plaintiff is not a named party in the Surrogate's Court proceedings.  "However, abstention under *Colorado River* does not require identical parties in the federal and state proceedings."  *Nieves*, 2006 WL 2989004 at *2.  Even assuming *arguendo* that this action and the Surrogate's Court proceedings are "parallel," however, the Court finds that abstention is

_____

(S.D.N.Y. July 11, 1989)) (internal quotation marks omitted).

4

not appropriate under *Colorado River*.

The abstention analysis "generally turns on several factors, 'with the balance heavily weighted in favor of the exercise of jurisdiction.'" *Salomon v. Burr Manor Estates, Inc.*, 635 F. Supp. 2d 196, 201 (E.D.N.Y. 2009) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 16 (1983)).  These factors include: "(1) the inconvenience of the federal forum; (2) the avoidance of piecemeal litigation; (3) the order in which jurisdiction was obtained by the concurrent forums; (4) whether state or federal law supplies the rule of decision; and (5) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction."  *Id.* at 201 (citing *Moses H. Cone*, 460 U.S. at 15-27; *Colorado River*, 424 U.S. at 818).  "The weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case."  *Moses H. Cone*, 460 U.S. at 16.  The Supreme Court has "emphasize[d] that [the] task in cases such as this is not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction."  *Id.* at 25-26 (emphasis in the original).

With respect to the first factor, defendants contend in their legal brief that the Eastern District of New York would be an inconvenient forum for Alexis Kirk Andrus, who "resides in upstate New York."  (Defs.' Mem. at 9.)  Any weight afforded to such claimed inconvenience is tempered, however, by the allegation contained in the Complaint that Andrus resides in Brooklyn, New York, which is located within this District.  (Compl. ¶ 4.)

With respect to the second factor, defendants argue that the Court's retention of

jurisdiction will lead to piecemeal litigation. Defendants contend that they will defend the foreclosure action by demonstrating that the Mortgage is invalid because it was procured by undue influence or fraud. (*See* Defs.' Mem. at 8.) Moreover, defendants anticipate that "the Surrogate's Court will [also] seek to render a decision" on the issue of possible fraud in connection with Kirk's execution of the Mortgage, since the validity of the Mortgage would impact the Estate. (*See id.*) In response, plaintiff asserts that even if this Court abstains from exercising its jurisdiction, the parties likely face the prospect of piecemeal litigation. (Pl.'s Opp'n at 13.) Plaintiff contends that the Surrogate's Court lacks "the equitable power to enter a judgment for foreclosure and sale . . . of a property encumbered by a mortgage." (*Id.*) According to plaintiff, therefore, even if the Surrogate's Court renders a decision on the issue of whether the Mortgage was procured through a fraud, the parties still face the prospect of having to return "to a Court of General Jurisdiction to adjudicate the default on the mortgage, the amount of monies owed to Plaintiff, and thereafter issue a judgment of foreclosure and sale." (*Id.*)

This point dovetails with plaintiff's argument regarding the fifth element: whether the state court proceeding will adequately protect its rights as the party seeking to invoke federal jurisdiction. Plaintiff asserts that because the Surrogate's Court lacks the authority to issue a judgment of foreclosure and sale, those proceedings cannot adequately protect plaintiff's rights. (*Id.* at 4-7.) Although the case law addressing the Surrogate's Court's authority to issue such judgments is sparse, it does appear that plaintiff has the better side of the argument. *See Keane v. Mixter*, 111 N.Y.S.2d 656, 658 (N.Y.Sup.Ct. 1952) (noting that even if the Surrogate's Court decided certain issues in the litigation, the matter would ultimately have to be returned to the Supreme Court to "litigate the validity of the mortgages, the question of defendants' default, the

6

amounts due, etc." because the Surrogate's Court "has no equitable powers to grant judgments of foreclosure and sale").

Defendants respond by asserting that the Surrogate's Court Procedure Act ("SCPA") does, in fact, provide the Surrogate's Court with such authority.  The cited provision of the SCPA empowers the Surrogate's Court to "authorize or direct the disposition of a decedent's real property," and defines "disposition" to include "sale" and "mortgage."  N.Y. Surr. Ct. Proc. Act § 1901.  Thus, this statute "permits a fiduciary . . . to get court approval to sell[ or] mortgage . . . the estate's real property."  N.Y. Surr. Ct. Proc. Act § 1901 commentary (McKinney 1996).  The statutory language cited, however, does not appear to expressly authorize the Surrogate's Court to grant a judgment of foreclosure and sale.  The fact that the Surrogate's Court may not grant plaintiff the sole form of relief it seeks weighs against a stay.

With respect to the order in which jurisdiction was obtained, the Court notes that the Preliminary Letters Testamentary were issued in June 2010, several months prior to the commencement of this action in October 2010.  "However, the priority factor of this balancing test should not simply 'be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions.'" *Salomon*, 635 F. Supp. 2d at 202 (quoting *Moses H. Cone*, 460 U.S. at 21).  Here, because defendants have provided the Court with no information about the state of the Surrogate's Court proceedings, the Court is not in a position to "adequately analyze this factor."  *See id.*

Overall, the Court finds that the balance of factors weighs against a stay of the litigation. Most importantly, the Court is not convinced that the Surrogate's Court can adequately protect the rights that plaintiff has asserted in this action because it is not at all clear that the Surrogate's

7

Court has the power to issue a judgment of foreclosure and sale of the Property.  Because

defendants have not demonstrated the existence of any "exceptional circumstances" supporting

abstention, the Court declines to stay this action in favor of the Surrogate's Court proceedings.

### *CONCLUSION*

For the reasons set forth above, defendants' motion is denied.

**SO ORDERED.**

Dated:   Central Islip, New York
         September 26, 2011

                                        /s/_____
                                        Denis R. Hurley
                                        United States District Judge

8